UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARCO ANTONIO SANCHEZ JUAREZ and
JANET GUTIERREZ,

        Plaintiffs,

  -against-

156-40 GRILL LLC d/b/a TAVERNA GREEK
GRILL, EVANGELOS POLLATOS, MARIA
KARRAS-POLLATOS, MICHAEL
SIDERAKIS, and KONSTANTINOS SIKLAS,

        Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-5081 (CBA) (LGD)

**AMON, United States District Judge:**

    Plaintiffs Marco Antonio Sanchez Juarez ("Sanchez") and Janet Gutierrez ("Gutierrez") bring this action against 156-40 Grill LLC (the "Taverna Grill"), Evangelos Pollatos ("Pollatos"), Maria Karras-Pollatos ("Karras-Pollatos"), Michael Siderakis ("Siderakis"), and Konstantinos Siklas ("Siklas") (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (ECF Docket Entry ("D.E.") # 1 ("Compl.").)

    I held a two-day bench trial on May 16 and 17, 2022 to determine each Defendant's liability, if any, under the FLSA and NYLL. The parties submitted post-trial briefing. (D.E. ## 117, 119, 120-21.) On March 31, 2023, I issued a decision making certain post-trial findings of fact and conclusions of law. (D.E. # 124 ("Liability M&O").) I found that Defendants Pollatos, Siderakis, and Siklas were joint employers and that, considering the concessions Defendants Pollatos and Karras-Pollatos made in their post-trial briefing, Defendants could not meaningfully dispute that damages were suffered in this case. (Id. 26.) I reserved findings of fact and conclusions of law regarding the damages caused in this case and directed the parties to engage in settlement discussions before the Honorable Lee G. Dunst, United States Magistrate Judge. On July 17, 2023, the parties submitted a joint status report and a request that I rule on the damages

1

issue because the parties were "too far apart" on damages "and unlikely to settle." (D.E. # 135.) Accordingly, after carefully considering the evidence introduced at trial, the arguments of counsel, and the controlling law on the issues presented, I make the following Findings of Fact and Conclusions of Law related to damages pursuant to Federal Rule of Civil Procedure 52(a)(1).

## FINDINGS OF FACT

As was the case in the Liability M&O, these Findings of Fact are based in large measure upon credibility determinations. Pertinent to the foregoing Findings, in the Liability M&O, I found that Plaintiffs Sanchez and Gutierrez were largely credible as it pertained to the day-to-day operations of the Taverna Grill, their terms of employment, and their rates of compensation, and that Defendants Karras-Pollatos, Siderakis, and Siklas on critical issues were not credible because their testimony frequently contradicted earlier sworn testimony that was either given in depositions in this case or in affidavits and affirmations in other, related cases. (Liability M&O 1-2.) I maintain this baseline credibility determination for the purposes of the foregoing Findings of Fact.

Also pertinent to the foregoing Findings, in the Liability M&O, I found that Sanchez failed to meet his burden to prove his involvement in the construction phase by a preponderance of the evidence. (Id. 4.) Given this Finding, I do not address Sanchez's claims for damages during this time period, nor Defendants' concessions on this point, and find that Sanchez is not eligible for damages during the construction period. (See D.E. # 117 ("Plaintiffs' Proposed Findings") 2; D.E. # 120 ("Defendants' Proposed Findings") 1.) I also found that there were about three weeks in which Sanchez was not paid at all between March 24, 2013 and April 11, 2013. (Liability M&O 8.) I further found that Sanchez was never told by anyone at the restaurant that his salary was expected to cover pay at time-and-a-half for hours worked beyond 40 hours in one week. (Id. 3.) Finally, I

found that Gutierrez did not take breaks during the workday and was not permitted to leave the premises of Taverna Grill. (Id. 9.)

In their post-trial briefing, Defendants Pollatos and Karras-Pollatos made the following concessions relevant to the damages calculus:

- Pollatos, Siderakis, and Siklas promised Sanchez a salary of $1,000.00 per week once Taverna Grill started to operate. (Defendants' Proposed Findings 1.)

- Sanchez was told that he would initially work ten hours per day, six days per week, and more hours as the restaurant developed. (Id.)

- From about April 22, 2013, through about January 21, 2014, Sanchez was paid $833.33 per week on average (amounting to an underpayment of $166.67 per week for this period). (Id. 4.)

- Gutierrez sought employment from Pollatos, who told Guttierez she would be expected to work six days per week (with Mondays off), eight to ten hours per day from about 11:00 a.m. through about 9:00 p.m., for $600.00 per week. (Id.)

- In April and June of 2013, Gutierrez was paid an average of $425 per week out of her promised $600.00, and for her last three weeks of work in June 2013, she was not paid anything. (Id. 5.)

There are three remaining factual disputes between the parties relevant to the question of damages amount:

- Sanchez's weekly hours worked for the time periods between March 24, 2013 through July 31, 2013 and August 1, 2013 and January 21, 2014. (Plaintiffs' Proposed Findings 2-3; Defendants' Proposed Findings 3.)

- Whether Gutierrez worked more than 60 hours per week. (Plaintiffs' Proposed Findings 4; Defendants' Proposed Findings 5.)

- Whether and when both Sanchez and Gutierrez worked a spread of time greater than 10 hours per day.

On these three remaining factual questions, and considering my determination that Plaintiffs were largely credible as it pertained to the day-to-day operations of the Taverna Grill, I make the following Findings:

1. From about March 24, 2013, through about July 31, 2013 (about four or five months), Sanchez worked about 94.50 hours per week and a spread of time greater than 10 hours seven days per week. (Plaintiffs' Proposed Findings 2-3; D.E. ## 117-1, 117-2 ("Tr.") 29:7-17, 75:15-76:21.)

2. From about August 1, 2013, through about January 21, 2014, Sanchez worked about 81 hours per week and a spread of time greater than 10 hours six days per week. (Plaintiffs' Proposed Findings 3; Tr. 29:7-17.)

3. Considering my previous Finding that Gutierrez did not take breaks during the workday, Gutierrez worked 68.50 hours per week and a spread of time greater than 10 hours six days per week (with the exception of about April 12 through 21, 2013, when Taverna Grill's employees walked out because they were not being paid). (Plaintiffs' Proposed Findings 4; Tr. 87:2-21.)

## CONCLUSIONS OF LAW

"In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). The "'preponderance of evidence' standard is the traditional standard in civil and administrative proceedings." Hassoun v. Searls, 968 F.3d 190, 202 (2d Cir. 2020) (quoting Sea Island Broad Corp. of S.C. v. FCC, 627 F.2d 240, 243 (D.C. Cir. 1980)).

Plaintiffs claim that they are entitled to unpaid wages and unpaid overtime wages under the FLSA and NYLL, spread of hours pay under the NYLL, prejudgment interest, and statutory damages under the NYLL for Defendants' failure to provide time of hire notices and wage statements.[1] Each Defendant's sole defense at trial was that they were not "employers" under the FLSA or NYLL. (Liability M&O 13; D.E. # 87 § IV.) I previously found that Plaintiffs have proved by a preponderance of the evidence that Pollatos, Siderakis, and Siklas were all "employers" for purposes of the FLSA and NYLL, but that Karras-Pollatos was not. (Liability M&O 13.) I also found that Siderakis and Siklas were joint employers with Pollatos from March 2013 through September 2013 (and that Pollatos served as an employer for the duration of

---

[1] Where the analysis under the FLSA and the NYLL differs, Plaintiffs have opted to refer to the NYLL because it is the more generous statute. (Plaintiffs' Proposed Findings 21.)

the relevant time period). (Id. 26.) Pollatos, Siderakis, and Siklas are, therefore, jointly and severally liable for any damages incurred by Plaintiffs between March 2013 and September 2013. (Id. (citing Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015)).) I now find that Plaintiffs have proved by a preponderance of the evidence that they are entitled to unpaid wages, unpaid overtime wages, and spread of hours pay, but that they are not entitled to statutory damages for Defendants' failure to provide time of hire notices and wage statements.

I.  **Unpaid Wages**

"Where a non-exempt employee has an agreement with his or her employer to be paid at a rate greater than the minimum wage, several courts have found that the failure to pay the promised rate is a violation of NYLL § 191, entitling the employee to damages under NYLL § 198." Cavalotti v. Daddyo's BBQ, Inc., No. 15-CV-6469 (PKC), 2018 WL 5456654, at *13 (E.D.N.Y. Sept. 8, 2018). In this case, I have found that Defendants did not pay Plaintiffs for some of the weeks they worked and sometimes paid Plaintiffs less than what Plaintiffs had been promised. Specifically, Defendants failed to pay Sanchez between March 24, 2013 and April 11, 2013 and failed to pay Gutierrez for her last three weeks of work in June 2013. Defendants also underpaid Sanchez by an average of $167 per week between about April 22, 2013 through about January 21, 2014, and likewise underpaid Gutierrez by an average of $175 per week in April and June 2013. Plaintiffs are entitled to damages for each of these instances of nonpayment of wages and underpayment of the agreed-upon wage rate, in the amount of the difference between the salaries they were promised and the salaries they were paid, calculated as follows:

<u>Sanchez:</u>

| Time Period | Promised Weekly Salary | Weekly Salary Paid (avg.) | Unpaid Wages Per Week | Unpaid Wages Per Period |
|---|---|---|---|---|
| March 24, 2013-April 11, 2013 | $1,000.00 | $0.00 | $1,000.00 | $2,714.29 |
| April 12, 2013-April 21, 2013 (employee walkout) | -- | -- | -- | -- |
| April 22, 2013-July 31, 2013 | $1,000.00 | $833.33 | $166.67 | $2,404.81 |
| August 1, 2013-December 30, 2013 | $1,000.00 | $833.33 | $166.67 | $3,619.11 |
| December 31, 2013-January 21, 2014 | $1,000.00 | $833.33 | $166.67 | $523.82 |
| | | | | Total Unpaid Wages (Sanchez): $9,262.03 |

<u>Gutierrez:</u>

| Time Period | Promised Weekly Salary | Weekly Salary Paid (avg.) | Unpaid Wages Per Week | Unpaid Wages Per Period |
|---|---|---|---|---|
| March 24, 2013-April 11, 2013 | $600.00 | $425.00 | $175.00 | $475.00 |
| April 12, 2013-April 21, 2013 (employee walkout) | -- | -- | -- | -- |
| April 22, 2013-June 2, 2013 | $600.00 | $600.00 | -- | -- |
| June 3, 2013-June 9, 2013 | $600.00 | $425.00 | $175.00 | $175.00 |
| June 10, 2013-June 30, 2013 | $600.00 | $0.00 | $600.00 | $1,800.00 |
| | | | | Total Unpaid Wages (Guiterrez): $2,450.00 |

II. **Unpaid Overtime Wages**

Both the FLSA and the NYLL provide that employees "must be paid, at minimum, one and

6

one half the regular rate that they are normally paid for any hours worked in excess of forty hours per week." Pinzon v. Paul Lent Mech. Sys., Inc., No. 11-CV-3384 (DRH) (WDW), 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012), report and recommendation adopted, No. 11-CV-3384 (DRH) (WDW), 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012). "To establish liability under the FLSA [and NYLL] on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011). However, employers are required to maintain "proper and accurate employment records" under the FLSA. Alvarado v. GC Dealer Servs. Inc., 511 F. Supp. 3d 321, 364 (E.D.N.Y. 2021). Where a defendant employer has failed to maintain proper employment records, an employee may carry their burden of proof by showing that they "ha[ve] in fact performed work for which [they were] improperly compensated and if [they produce] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. at 364-65 (quoting Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 66-67 (2d Cir. 1997)). This is not a demanding burden; Plaintiffs are able to satisfy their burden through estimates based on their own recollection under both the FLSA and NYLL. Id. at 365 & n.19 (quoting Hernandez Gomez v. 4 Runners, Inc., 769 F. App'x 1, 2 (2d Cir. 2019) (summary order)). To the extent it is proven, overtime compensation must be paid at a rate of at least one and one-half times the employee's regular rate of pay for each hour worked over forty hours in that workweek. See 29 U.S.C. § 207; 12 N.Y.C.R.R. § 146-1.4.

Plaintiffs have met their burden by testifying credibly as to their hours worked and the fact that they were never paid for any of their hours beyond the fortieth, and Defendants' own estimates—apparently provided without factual basis—do not rebut Plaintiffs' testimony. I have already found that from about March 24, 2013, through about July 31, 2013, Sanchez worked about

94.50 hours per week; that from about August 1, 2013, through about January 21, 2014, Sanchez worked about 81 hours per week; and that Gutierrez worked 68.50 hours per week (with the exception of about April 12 through 21, 2013, during the employee walkout).

Defendants in their proposed damages calculation appear to argue that I should calculate any overtime owed on the basis of a 60-hour work week as opposed to a 40-hour work week. But there is a rebuttable presumption that Plaintiffs' weekly salary was intended to compensate for a 40-hour workweek that can be overcome only if there has been "'an explicit understanding between the employer and employee' that the weekly salary covers both regular and overtime pay." Singh v. All Empire Bldg. Contractors, Inc., No. 20-CV-2736 (DRH) (AYS), 2021 WL 3055858, at *4 (E.D.N.Y. June 30, 2021), report and recommendation adopted, No. 20-CV-2736 (DRH) (AYS), 2021 WL 3054963 (E.D.N.Y. July 20, 2021) (quoting Amaya v. Superior Tile and Granite Corp., No. 10-CV-4525, 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012)). Defendants have not provided evidence of such an "explicit understanding." Furthermore, I found in the Liability M&O that neither Sanchez nor Gutierrez were told by anyone at the restaurant that their salary was expected to cover pay at time-and-a-half for hours worked beyond 40 hours in one week. (Liability M&O 3, 6.) Therefore, I find that Plaintiffs' overtime shortfalls per week are calculated by dividing their promised weekly salary by 40 hours to determine their regular hourly rates, multiplying that result by 1.5 to determine their overtime hourly rates, and multiplying that result by the number of overtime hours worked. Sanchez worked 54.50 weekly overtime hours from March 24, 2013 through about July 31, 2013 and 41 weekly overtime hours from about August 1, 2013, through about January 21, 2014. Gutierrez worked 28.50 weekly overtime hours per week (with the exception of the period during the employee walkout). The unpaid overtime Plaintiffs are owed is calculated as follows:

8

**Sanchez:**

| Time Period | Weekly Overtime Hours (Hours Worked-40) | Hourly Overtime Rate (1.5x Regular Hourly Wage) | Unpaid Overtime Per Week (Hours Worked x Overtime Rate) | Unpaid Overtime Per Period |
|---|---|---|---|---|
| March 24, 2013-April 11, 2013 | 54.5 | $37.50 | $2,043.75 | $5,547.32 |
| April 12, 2013-April 21, 2013 (employee walkout) | -- | -- | -- | -- |
| April 22, 2013-July 31, 2013 | 54.5 | $37.50 | $2,043.75 | $29,488.39 |
| August 1, 2013-December 30, 2013 | 41 | $37.50 | $1,537.50 | $33,385.71 |
| December 31, 2013-January 21, 2014 | 41 | $37.50 | $1,537.50 | $4,832.14 |
| | | | | Total Unpaid Overtime (Sanchez): $73,253.56 |

**Gutierrez:**

| Time Period | Weekly Overtime Hours (Hours Worked-40) | Hourly Overtime Rate (1.5x Regular Hourly Wage) | Unpaid Overtime Per Week (Hours Worked x Overtime Rate) | Unpaid Overtime Per Period |
|---|---|---|---|---|
| March 24, 2013-April 11, 2013 | 28.5 | $22.50 | $641.25 | $1,740.54 |
| April 12, 2013-April 21, 2013 (employee walkout) | -- | -- | -- | -- |
| April 22, 2013-June 2, 2013 | 28.5 | $22.50 | $641.25 | $3,847.50 |
| June 3, 2013-June 9, 2013 | 28.5 | $22.50 | $641.25 | $641.25 |
| June 10, 2013-June 30, 2013 | 28.5 | $22.50 | $641.25 | $1,923.75 |
| | | | | Total Unpaid Overtime |

| Time Period | Weekly Overtime Hours (Hours Worked-40) | Hourly Overtime Rate (1.5x Regular Hourly Wage) | Unpaid Overtime Per Week (Hours Worked x Overtime Rate) | Unpaid Overtime Per Period |
|---|---|---|---|---|
| | | | | (Gutierrez): $8,153.04 |

## III. Spread of Time Wages

The NYLL Wage Order entitles employees to one additional hour of pay at the minimum hourly wage when the interval between the beginning and end of an employee's workday, even including breaks, exceeds 10 hours. 12 N.Y.C.R.R. § 146-1.6. Spread of time wages, therefore, are calculated by multiplying the legal minimum wage rate by the number of days that Plaintiffs worked in excess of 10 hours per day in each period. I found in the Liability M&O that Sanchez was never told by anyone at the restaurant that his salary would include extra pay for each day that he worked more than 10 hours. (Liability M&O 3.) I make this Finding as to Gutierrez as well. I therefore find that Sanchez is entitled to spread of time damages for seven days per week from about March 24, 2013 through July 31, 2013 and for six days per week from about August 1, 2013 through about January 21, 2014, and that Gutierrez is entitled to spread of time damages for six days per week throughout her employment (with the exception of the employee walkout). The spread of time wages owed to Plaintiffs are as follows:

**Sanchez:**

| Time Period | Spread of Time Shortfall Per Week | Spread of Time Shortfall Per Period |
|---|---|---|
| March 24, 2013-April 11, 2013 | $50.75 | $137.75 |
| April 12, 2013-April 21, 2013 (employee walkout) | -- | -- |

| Time Period | Spread of Time Shortfall Per Week | Spread of Time Shortfall Per Period |
|---|---|---|
| April 22, 2013-July 31, 2013 | $50.75 | $732.25 |
| August 1, 2013-December 30, 2013 | $43.50 | $944.57 |
| December 31, 2013-January 21, 2014 | $48.00 | $150.86 |
| | | Total Spread of Time Wages (Sanchez): $1,965.43 |

Gutierrez:

| Time Period | Spread of Time Shortfall Per Week | Spread of Time Shortfall Per Period |
|---|---|---|
| March 24, 2013-April 11, 2013 | $43.50 | $118.07 |
| April 12, 2013-April 21, 2013 (employee walkout) | -- | -- |
| April 22, 2013-June 2, 2013 | $43.50 | $261.00 |
| June 3, 2013-June 9, 2013 | $43.50 | $43.50 |
| June 10, 2013-June 30, 2013 | $43.50 | $130.50 |
| | | Total Spread of Time Wages (Gutierrez): $553.07 |

## IV. Liquidated Damages

Both the FLSA and NYLL mandate liquidated damages equal to 100% of the unpaid wages awarded to an employee, unless the employer can show that they acted in good faith. See 29 U.S.C. § 216(b); N.Y. Lab. L. §§ 198.1-a, 663.1. "Where a plaintiff is entitled to damages

11

under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." Charvac v. M & T Project Managers of N.Y., Inc., No. 12-CV-05637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015), report and recommendation adopted as modified, No. 12-CV-5637 (CBA) (RER), 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015) (internal citations and quotation marks omitted). Here, that is the NYLL because it provides for the availability of spread of time damages and the availability of both liquidated damages and prejudgment interest.

As for the liquidated damages calculus, Defendants have failed to make the requisite showing of good faith and so the imposition of liquidated damages is mandatory. Wang v. XBB, Inc., No. 18-CV-7341 (PKC), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022). Plaintiffs are therefore entitled to liquidated damages equaling the sum total of their unpaid wages, unpaid overtime wages, and spread of time wages as follows:

Sanchez: $84,481.02

| Total Unpaid Wages | Total Unpaid Overtime | Total Spread of Time Wages |
|---|---|---|
| $9,262.03 | $73,253.56 | $1,965.43 |
| | | **Total Liquidated Damages: $84,481.02** |

Gutierrez: $11,156.11

| Total Unpaid Wages | Total Unpaid Overtime | Total Spread of Time Wages |
|---|---|---|
| $2,450.00 | $8,153.04 | $553.07 |
| | | **Total Liquidated Damages: $11,156.11** |

### V.   Prejudgment and Postjudgment Interest

Plaintiffs are entitled to prejudgment interest of nine percent per annum on their unpaid wages, unpaid overtime wages, and unpaid spread of time wages under the NYLL. Interest is to

be computed from the "earliest ascertainable date the cause of action existed," or, where damages were incurred at various times, interest is to be computed "upon all the damages from a single reasonable intermediate date." N.Y. C.P.L.R. 5001. Because Sanchez and Gutierrez were underpaid over a period of months to years, I will calculate prejudgment interest from a reasonable intermediate date: the midpoint between Plaintiffs' first and last days of employment. See Leon Neri v. Abi Japanese Rest., Inc., No. 20-CV-581 (MKB), 2021 WL 6804252, at *13 (E.D.N.Y. Nov. 29, 2021), aff'd sub nom. Neri v. Abi Japanese Rest., Inc., No. 22-227-CV, 2023 WL 2395995 (2d Cir. Mar. 8, 2023).

Defendants employed Sanchez from March 24, 2013 until January 21, 2014. I therefore calculate interest from August 22, 2013, the date halfway between March 24, 2013 and January 21, 2014. Sanchez is entitled to prejudgment interest on his wage claim damages of $84,481.02 from August 22, 2013 until the date judgment is entered, at a rate of $20.83 per day (($84,481.02*0.09)/365 days).

Defendants employed Gutierrez from March 24, 2013 until June 30, 2013. I therefore calculate interest from May 12, 2013, the date halfway between March 24, 2013 and June 30, 2013. Gutierrez is entitled to prejudgment interest on her wage claim damages of $11,156.11 from May 12, 2013 until the date judgment is entered, at a rate of $2.75 per day ((11,156.11*.09)/365 days).

Plaintiffs are also entitled to mandatory post-judgment interest on all sums awarded, which will accrue from the entry of judgment until the date of payment. See 28 U.S.C.A. § 1961.

### VI. Unfurnished Wage Notices and Wage Statements

Under the NYLL, an employer must provide an employee, in writing in English and in the

employee's primary language, at the time of hiring, a notice containing the following information: the employee's regular and overtime rates of pay and the bases thereof; any allowances claimed as part of the minimum wage; the regular pay day designated by the employer; and the employer's name, doing-business-as names, office or business address, mailing address, and telephone number. See N.Y. Lab. L. § 195.1(a). Likewise, an employer must provide an employee a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; the employee's name; the employer's name, address, and telephone number; the employee's regular and overtime rates of pay and the bases thereof; gross wages; deductions; any allowances claimed as part of the minimum wage; and net wages. See N.Y. Lab. L. § 195.3. Defendants have not rebutted Plaintiffs' testimony that Plaintiffs were not provided with a wage notice at their time of hire or that Plaintiffs were not provided with wage statements with each payment of wages. Instead, Defendants make the now-familiar argument that Plaintiffs lack Article III standing to pursue damages for these statutory violations under the Supreme Court's 2021 decision in TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021), citing to cases in this district finding a lack of standing in this context because the plaintiffs had failed to allege an injury in fact, one of the essential elements of standing. (Defendants' Proposed Findings 8 (citing Wang, 2022 WL 912592, at *13 and Sevilla v. House of Salads One LLC, No. 20-CV-6072 (PKC), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022).) Importantly, a standing defect can be raised at any time, see Thompson v. Cnty. of Franklin, 15 F.3d 245, 249 (2d Cir. 1994), and federal courts may not exercise supplemental jurisdiction over state law claims that do not satisfy the elements of Article III standing, DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352-53 (2006).

Under TransUnion, identifying a statutory violation does not, in and of itself, confer standing; plaintiffs must have also suffered a "concrete harm," defined as a harm with a close

14

analogue to a traditional cause of action, such as "physical harm, monetary harm, or various intangible harms." TransUnion, 141 S. Ct. at 2200. Where plaintiffs have based claims solely on technical statutory violations of the NYLL, some courts post-TransUnion have held that plaintiffs cannot recover damages without identifying a separate, concrete injury that occurred as a consequence of the statutory violation. See Wang, 2022 WL 912592, at *13.

Plaintiffs' sole response is that these cases are outliers in this Circuit (D.E. # 121 ("Plaintiffs' Reply")), but the landscape is better characterized as one in which courts in this Circuit have come to differing conclusions, and the Second Circuit has not addressed this issue.[2] See Lipstein v. 20X Hosp. LLC, No. 22-CV-04812 (JLR) (JW), 2023 WL 6124048, at *8 (S.D.N.Y. Sept. 19, 2023) (collecting cases).[3] Indeed, Plaintiffs do not attempt an argument that they have alleged or proven a sufficiently concrete injury with respect to their notice claims under TransUnion, and their Complaint bases their demand for damages solely on "Defendants' violations of New York Labor Law." (Compl. ¶¶ 150, 155.) Had Plaintiffs alleged, argued, or testified that Defendants' failure to provide information about their rate of pay and accurate wage statements "hurt [their] ability to assess whether [they] were being properly paid and therefore promptly raise issues of underpayment with [their] employer," for example, this monetary harm suffered as a "tangible downstream consequence" of Defendants' statutory violations likely would have been sufficient for me to find standing. Lipstein, 2023 WL 6124048, at *9. But in the absence of such allegations, testimony, or arguments, this case is more closely analogous to Wang, and I

---

[2] In fact, the cases Plaintiffs cite did not address the issue of standing to recover statutory damages for unfurnished wage notices or wage statements. See Neri, 2021 WL 6804252, at *9-10 (awarding statutory wage notice and wage statement damages without addressing standing); Lin v. Joe Japanese Buffet Rest. Inc., No. 17-CV-3435 (WFK), 2021 WL 5810488, at *8 (E.D.N.Y. Dec. 7, 2021) (same); Perry v. High Level Dev. Contracting & Sec. LLC, No. 20-CV-02180 (AMD) (PK), 2022 WL 1018791, at *11 (E.D.N.Y. Mar. 16, 2022), report and recommendation adopted, No. 20-CV-2180 (AMD) (PK), 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022) (same).

[3] Plaintiffs also argue that Defendants misapply TransUnion and that the case supports their "injury-in-law" theory, but in so doing, they appear to have quoted portions of Justice Thomas's dissenting opinion. TransUnion, 141 S. Ct. at 2218 (Thomas, J., dissenting).

adopt its reasoning here. Plaintiffs' bare allegation of statutory violations does not constitute a sufficiently concrete injury under TransUnion. Plaintiffs, therefore, do not have standing to pursue claims for statutory damages for unfurnished wage notices and wage statements under the NYLL.

## CONCLUSION

For these reasons, the Court awards Plaintiffs damages in the amount of $168,962.04 to Sanchez consisting of (1) $84,481.02 in unpaid wages and (2) $84,481.02 in liquidated damages. The Court also awards damages against Defendants in the amount of $22,312.22 to Gutierrez consisting of (1) $11,156.11 in unpaid wages and (2) $11,156.11 in liquidated damages. Prejudgment and post-judgment interest shall be added to this amount, to be calculated as stated above. If the amounts awarded remain unpaid within ninety days after judgment or after the time to appeal has expired if no appeal is pending, the total amount will be increased by fifteen percent in accordance with N.Y.L.L. § 198(4). See Neri, 2021 WL 6804252, at *13. As noted above, Pollatos, Siderakis, and Siklas are jointly and severally liable for damages incurred through September 2013, and Pollatos is responsible for damages for the remainder of the relevant time period.

In accordance with this ruling, Plaintiffs are directed to make their motion for attorneys' fees and costs under Rule 54(d) of the Federal Rules of Civil Procedure within thirty days of this Memorandum and Order.

SO ORDERED.

Dated: November 28, 2023
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge